UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------------x
FAYE T. MADIGAN, Independent Administrator
of the Estate of Kenneth M. Thompson, deceased,

                                               Plaintiff,                    **MEMORANDUM AND ORDER**
                   - against -                                              16-MC-965 (RRM)

J.P.GIBBONS & CO., INC., f/k/a GOLDEN LENDER
FINANCIAL GROUP, INC.; ARON O. BRONSTEIN;
TOMER M. YUZARY; and ROMAN SAKHAROVICH,
a/k/a ROMAN SAKH,

                                               Defendants.
----------------------------------------------------------------------x
ROSLYNN R. MAUSKOPF, United States District Judge.

        In April 2003, plaintiff Faye T. Madigan, the administrator of the estate of Kenneth M. Thompson, was awarded a $4,185,957 judgment (the "Judgment") against defendants Aron O. Bronstein, Tomer M. Yuzary, and Roman Sakharovich by the United States District Court for the Northern District of Georgia ("N.D. Ga.")  Thirteen years later, in April 2016, plaintiff commenced this miscellaneous action by registering the Judgment in this District.  In May 2016, Bronstein filed a motion seeking, among other things, to void the Judgment for lack of personal jurisdiction or to stay enforcement of the Judgment on the ground that the Judgment was already dormant and unenforceable at the time it was registered.

        The Court referred Bronstein's motion to Magistrate Judge Peggy Kuo who subsequently issued a Report and Recommendation (the "R&R"), recommending that the motion be granted to the extent of vacating the registration.  Plaintiff has timely objected to seven specific portions of the R&R.  The Court has conducted de novo review of those portions and, for the reasons set forth below, adopts the R&R in its entirety, except for the alternative analysis set forth in section IV of the R&R.

BACKGROUND

Bronstein and Yuzary were principals of, and Sakharovich was a registered representative of, J.P. Gibbons & Co., Inc. ("Gibbons"), formerly known as The Golden Lender Financial Group, Inc. ("Golden Lender"), a registered broker-dealer with offices in Manhattan.  In the late 1990s, Sakharovich and Iosif Pak, another registered representative of Golden Lender, acting at the direction of Bronstein and Yuzary, sold unregistered shares of Golden Lender stock to retail customers using a high-pressure sales pitch that included numerous material misrepresentations and omissions.  One of those customers was Kenneth M. Thompson, who lost millions of dollars as a result of his purchase of the shares.

In February 2000, the United States Attorney's Office for the Southern District of New York ("S.D.N.Y.") indicted Golden Lender and Bronstein, Yuzary, Sakharovich, and Pak (the "Individual Defendants") on 14 counts of securities fraud and conspiracy to commit that fraud. (*See United States v. Sakharovich*, S.D.N.Y. Docket No. 00-CR-100 (PAE), Doc. No. 14.)  That same month, the Securities and Exchange Commission ("SEC") commenced a civil action against those same five defendants in the United States District Court for the S.D.N.Y., seeking injunctive relief and an order directing defendants to disgorge the ill-gotten gains and to pay civil penalties.  (*See SEC v. Bronstein*, S.D.N.Y. Docket No. 00-CV-1179 (LAK), Doc. No. 1.)  Also in 2000, plaintiff filed for arbitration under the auspices of NASD Dispute Resolution, Inc., in accordance with the terms of Thompson's customer agreement with Golden Lender.

On November 3, 2000, Bronstein and Yuzary pleaded guilty to all 14 counts and Sakharovich and Pak pleaded guilty to 10 and 5 counts, respectively.  A month later, Golden Lender pleaded guilty to all counts except one.  On March 19, 2001, Judge Michael B. Mukasey, then Chief Judge of the United States District Court for the S.D.N.Y., sentenced all four

Individual Defendants to terms of imprisonment, followed by three years of supervised release. (*See* S.D.N.Y. Docket No. 00-CR-100 (PAE), Docs. No. 52, 54, 56–57.) After determining that Golden Lender had no assets, Judge Mukasey ordered that the corporation be dissolved. (*Id.*, Docs. No. 53, 70.)

Judge Mukasey also ordered all four Individual Defendants to pay $3,209,000 in restitution, jointly and severally. (*Id.*, Docs. No. 52, 54, 56–57.) He specifically ordered Bronstein "to liquidate all assets" and to pay "all assets above the costs of rent, food, and clothing" into "an account maintained by the Probation Office … for disbursements of restitution to the victims." (*Id.*, Doc. No. 54.) According to an affidavit filed by Fred. L. Somers, Jr.—a Georgia attorney who represented plaintiff—plaintiff received $42,613.22 in restitution from the S.D.N.Y. in July 2001. (*See* Somers Aff. (Doc. No. 42-1) at ¶ 5.) Following the convictions and in light of the orders of restitution, the SEC decided to forego the claims for monetary relief in its civil action and settled for injunctive relief. (*See* Judgment in S.D.N.Y. Docket No. 00-CV-1179 (Doc. No. 23) at ¶ 9.)

On March 20, 2001—the day after the Individual Defendants were sentenced—an arbitration panel awarded plaintiff $4,185,957 against Gibbons, Bronstein, Yuzary, and Sakharovich, jointly and severally. On January 10, 2002, plaintiff commenced an action to confirm the arbitration award in the United States District Court for the N.D. Ga. Gibbons, which had been dissolved, was never served with process, and Bronstein, Yuzary, and Sakharovich never appeared in the action. On February 20, 2003, plaintiff moved to enter a default judgment and to confirm the arbitration award. (Doc. No. 8.) That motion was granted and on April 2, 2003, the Clerk of Court for the N.D. Ga. entered the Judgment, confirming the

arbitration award in the amount of $4,185,957, plus interest, against Bronstein, Yuzary, and Sakharovich, jointly and severally.

The S.D.N.Y. docket sheet indicates that Bronstein made payments of $240 or $360 almost every month during the three-year period after his March 19, 2004, release from federal custody. According to the docket sheet, those monthly payments ended on April 3, 2007, about the time that Bronstein's three-year term of supervised release expired. There is no indication that plaintiff complained to the S.D.N.Y. about Bronstein's failure to pay restitution until October 2017, when Joseph Paukman—the New York attorney who filed the instant action—requested that then Chief Judge Colleen McMahon reassign the S.D.N.Y. case. (*See* S.D.N.Y. Docket No. 00-CR-100, Doc. No. 77.)

<u>This Action, the Instant Motion, and Judge Kuo's R&R</u>

On April 11, 2016, plaintiff commenced this miscellaneous action by registering the Judgment in this District. On May 19, 2016, Bronstein filed a motion seeking either relief from the Judgment pursuant to Rules 60(b)(4), (5), or (6) of the Federal Rules of Civil Procedure or, in the alternative, an order staying enforcement of the registration on the ground that the Judgment was "void" because it was dormant and unenforceable. In support of the first argument, Bronstein filed an affirmation of Raquel Q. Vasserman, one of plaintiff's attorneys, asserting that the N.D. Ga. lacked personal jurisdiction over Bronstein because he was never served with process in that action. (Vasserman Aff. (Doc. No. 2) at ¶¶ 4, 16.) In support of the second argument, the Vasserman Affirmation asserts that the Judgment should not have been registered in this District because it was already dormant under Georgia law. (*Id.* at ¶¶ 13–14.)

In an electronic order dated July 11, 2016, the Court referred Bronstein's motion to Magistrate Judge Peggy Kuo for a report and recommendation. On June 13, 2018, Judge Kuo

4

issued the R&R, recommending that Bronstein's motion be granted to the extent of vacating the registration of the Georgia judgment and that the parties' cross-motions for attorney's fees be denied. Although familiarity with the R&R is assumed, the Court will briefly summarize the salient points for the convenience of the reader.

Judge Kuo interpreted Bronstein's motion as raising two issues: 1) that Bronstein did not have notice of the underlying lawsuit in Georgia, making the Judgment against him void for lack of *in personam* jurisdiction, and 2) that plaintiff failed to register the Judgment in this District before the expiration of the statute of limitations in Georgia. In section I of the R&R, Judge Kuo addressed the timeliness of Bronstein's motion, which sought relief from the Judgment pursuant to Rules 60(b)(4), (5), and (6) of the Federal Rules of Civil Procedure. The Magistrate Judge concluded that the motions pursuant to these subsections were timely because they were made within a "reasonable time," as required by Fed. R. Civ. P. 60(c)(1). Noting that the motion was filed just over one month after the Judgment was registered in this District, Judge Kuo initially stated: "To the extent that Defendant is seeking relief on the basis that the Georgia Judgment had become unenforceable by the time of registration in this District, … there would have been no reason to challenge the judgment before April 11, 2016"—the date the judgment was registered. (R&R at 3.) The magistrate judge then acknowledged that "Defendant's argument that the Georgia Judgment is void for improper service could have been raised earlier," but noted:

> Courts have held that a motion to vacate a judgment as void "may be made at any time." Accordingly, because the Motion was filed almost immediately after the registration of the Georgia Judgment in this District, and it raises an issue of voidness, the undersigned finds that the Motion was brought within a reasonable time.

(*Id.* at 4 (quoting *Thai-Lao Lignite (Thailand) Co. v. Gov't of Lao People's Democratic Republic*, 864 F.3d 172, 182 (2d Cir. 2017)).

5

In section II(a) of the R&R, Judge Kuo turned to the merits of the first issue. She noted that Bronstein had not challenged an affidavit establishing that he was served with process in the N.D. Ga. action on February 8, 2002—29 days after commencement of that action. Since Bronstein had not established that the N.D. Ga. lacked personal jurisdiction over him, the magistrate judge recommended denying Bronstein's request for relief from the Judgment pursuant to Rule 60(b)(4).

Next, Judge Kuo analyzed the merits of the second issue in two ways. First, in sections II(b) and III, she focused on the question of the Judgment's enforceability without ever attempting to fit the issue into the rubric of Rule 60(b). Then, in section IV, she provided an *alternative* analysis, analyzing the same issue under Rule 60(b). (R&R at 11 ("Alternatively, the undersigned recommends vacating the registration of the Georgia Judgment under Rule 60(b)(6).").)

In section II(b), Judge Kuo examined Georgia law, which provides that a judgment becomes dormant and unenforceable seven years after it is entered, unless there is a levy of execution or a notice of a bona fide public effort to enforce the execution in the courts. (R&R at 4 (citing OCGA § 9-12-60(a)).) She acknowledged that a levy of execution or a notice of a bona fide public effort to enforce would have the effect of instituting a new seven-year period, (*id.* (citing OCGA § 9-12-60(b))), and that a dormant judgment could be revived within three years of the date of dormancy, (*id.* (citing OCGA § 9-12-61).) But the magistrate judge credited an affidavit submitted by Jordan B. Forman, a Georgia attorney retained by Bronstein's counsel, who had researched Georgia records and found no evidence of any collection activity relating to the Judgment or any attempt to revive that Judgment. (R&R at 5 (citing Forman Aff. (Doc. No. 31-1)).) In addition, Judge Kuo relied the Somers Affidavit, in which plaintiff's attorney

6

admitted that plaintiff had taken no actions to enforce the Judgment in Georgia or elsewhere. (R&R at 5–6 (citing Somers Aff. at ¶ 5).)

After concluding that "the statute of limitations" for enforcing the judgment had already run, Judge Kuo next addressed the question of whether tolling that statute would be appropriate under the circumstances of this case. In evaluating this claim, she principally looked to OCGA § 9-3-96, which provides for tolling a statute of limitations where a defendant's fraud has "debarred or deterred" the plaintiff from filing an action. (R&R at 6 (quoting OCGA § 9-3-96).) To establish tolling under that statute, "a plaintiff must prove that: (1) the defendant committed actual fraud involving moral turpitude, (2) the fraud concealed the cause of action from the plaintiff, and (3) the plaintiff exercised reasonable diligence to discover his cause of action despite his failure to do so within the applicable statute of limitation." (R&R at 6 (quoting *Wilson v. Phillips*, 495 S.E.2d 904, 905 (Ga. App. 1998)).) Judge Kuo found that plaintiff had not provided proof of any "actual fraud" prior to April 2, 2013, and accordingly had failed to establish that such fraud caused plaintiff not to pursue enforcement or revival of the judgment. (R&R at 7–8.) In addition, she found that plaintiff had not exercised reasonable diligence in the ten years after the Judgment was entered. (*Id.* at 8.)

In section III, the R&R addressed plaintiff's argument that the act of registering the Judgment in this district gave rise to a new judgment, and that New York law gave plaintiff twenty years to enforce that judgment. Judge Kuo noted that the Judgment was already dormant by the time it was registered in this District, and cited to cases for the proposition that a dormant judgment could not be resurrected by registering it in another jurisdiction. She distinguished *Stanford v. Utley*, 341 F.2d 265 (8th Cir. 1965)—a case on which plaintiff relied—on the ground that the judgment in that case was registered before it expired. (R&R at 10.)

7

Although Bronstein's motion requested only a stay of the enforcement of the Judgment, Judge Kuo recommended that the registration be vacated. Judge Kuo noted that "a stay of enforcement is only temporary in nature, pending disposition of something else." (R&R at 10.) Because she had concluded that the Judgment was no longer enforceable in Georgia or in this District, she saw "no reason to delay enforcement, rather than denying it outright." (*Id.* at 11.)

Section IV of the R&R notes that Rule 60(b)(6) provides an alternative theory for vacating the Judgment. The R&R cites to *Covington Indus., Inc. v. Resintex, A.G.*, 629 F.2d 730, 733–34 (2d Cir. 1980), for the proposition that registration courts have the power to entertain Rule 60(b) motions relating to the judgment being registered. (R&R at 11.) After concluding that Judgment's dormancy does not provide grounds for relief under the first five subsections of Rule 60(b), the R&R concludes that the argument could be raised under Rule 60(b)(6) and "recommends granting Defendant relief from the Georgia Judgment under Rule 60(b)(6) by vacating its registration in this District." (R&R at 14.) The R&R also recommends denying both parties' motion for attorney's fees.

Plaintiff's Objections to the R&R

Plaintiff timely raised seven objections to the R&R. The first relates to a specific portion of the R&R regarding the timeliness of Bronstein's second argument, in which Judge Kuo stated: "To the extent that Defendant is seeking relief on the basis that the Georgia Judgment had become unenforceable by the time of registration in this District, … there would have been no reason to challenge the judgment before April 11, 2016." (R&R at 3.) Plaintiff argues that this finding is "without evidentiary support and is mere conjecture by the Magistrate Judge." (Objections (Doc. No. 63) at 1.) Plaintiff asserts that Judge Kuo's failure to hold a hearing on this factual issue deprived Plaintiff of the opportunity "to show why the Defendant would have

8

had previous reason to challenge the judgment." (*Id.* at 2.) Plaintiff further argues that, "even if the Magistrate Judge's unsupported conjecture is factually correct, it does not go to excusing the fact the Defendant had the opportunity for seven years preceding April 11, 2016 to move to vacate the judgment but failed to do so." (*Id.*)

Plaintiff's second objection relates to another portion of R&R regarding the timeliness of Bronstein's motion, in which Judge Kuo stated that the motion to vacate the Judgment for lack of personal jurisdiction "raises an issue of voidness." (R&R at 4.) The basis for this objection is unclear. First, Plaintiff states that the "basis for the judgment being void is non-existent." (Objections at 2.) Plaintiff then cites an unpublished Fourth Circuit case which states that a "judgment may be vacated for voidness only if the rendering court lacked personal jurisdiction, subject matter jurisdiction, or acted in a manner inconsistent with due process of law." (*Id.* (quoting *Garcia Fin. Grp., Inc. v. Virginia Accelerators Corp.*, 3 F. App'x 86, 88 (4th Cir. 2001)).) Finally, after citing to a Sixth Circuit case for the proposition that the movant bears the burden of proving that the court lacked *in personam* jurisdiction, Plaintiff objects to Judge Kuo's finding on the ground that it "confuses 'voidness' with 'voidable.'" (*Id.* at 3.)

The third objection relates to a sentence contained in that portion of the R&R which concluded that plaintiff had not sought enforcement of the Judgment within ten years of its entry. Judge Kuo introduced her discussion of the Somers Affidavit by stating: "The record is devoid of any effort to enforce the Georgia Judgment because Plaintiff apparently had no intention of enforcing it." (R&R at 5.) Although the R&R then went on to summarize the Somers Affidavit's explanation of why plaintiff chose not to pursue enforcement actions, plaintiff claims that the "Magistrate Judge again is conjecting rather than stating the correct facts." (Objections

9

at 3.) Plaintiff notes that she authorized her counsel to pursue collection in March 2016, after discovering that Bronstein had substantial assets or income. (*Id.*)

The fourth objection pertains to Judge Kuo's discussion of equitable tolling. Plaintiff specifically objects to that portion of the R&R which characterizes the time limitation on the enforcement of a judgment as a statute of limitations. The R&R states that "[o]nce it is established that a statute of limitations has run, in order for a matter to remain viable, the 'plaintiff has the burden of showing the existence of facts that would toll the statute of limitation.'" (R&R at 6 (quoting *Falanga v. Kirschner & Venker, P.C.*, 286 Ga. App. 92, 94, 648 S.E.2d 690, 693 (2007)).) Plaintiff argues that "[t]he Magistrate Judge confuses statutes of limitation with statutes of repose," that "the only relief available for a Plaintiff after … a statute of repose has expired is equitable estoppel," and that "[t]he facts supporting equitable estoppel are quite different and are less burdensome than the facts required to establish tolling under a statute of limitations." (Objections at 4.)

Plaintiff's fifth objection principally contests Judge Kuo's rejection of plaintiff's claim that the 2016 registration of the Judgment created "a 'new' enforceable judgment" that "should be afforded the 20 year New York statute of repose." (Objections at 8–9.) In making this argument, plaintiff principally relies on *Stanford v. Utley*, 341 F.2d 265 (8th Cir. 1965), but also cites to *Wells Fargo Equipment Finance, Inc. v. Asterbadi*, 841 F.3d 237 (4th Cir. 2016), a case decided after the R&R was issued.

The fifth objection alludes to two issues. First, plaintiff asserts that Judge Kuo raised the issue of whether the Judgment was still enforceable sua sponte. Plaintiff asserts that Bronstein only argued that the Judgment was "void," and thus only raised the issue of whether the United States District Court for the N.D. Ga. had subject-matter jurisdiction and personal jurisdiction.

10

(Objections at 7.)  Plaintiff asserts that "this case is not one where the Court should be raising a time bar on its own initiative," though she concedes that "a district court may raise a time bar on its own initiative" in "appropriate circumstances" and makes no effort to explain why it would be inappropriate to do so here.  (*Id.*)  Rather, she states only that she "does not waive [the] right to object to the Court exercising sua sponte power to determine the question of repose."  (*Id.*)

Second, plaintiff implies that the Judgment is tantamount to a consent judgment and, therefore, cannot be appealed.  This objection relies on *Stanford* for the proposition that "a person who has consented to the entry of a judgment, unless the matter is one of jurisdiction, has no status to appeal."  (*Id.* at 10 (quoting *Stanford*, 341 F.2d at 271).)  Alleging that Bronstein consented to arbitration before the NASD, whose rules provide for entry of awards in any competent jurisdiction, plaintiff concludes that "the award and subsequent judgment is not subject to appeal except on jurisdictional grounds." (*Id.* at 11.)

The sixth objection also raises two issues.  First, this objection contests Judge Kuo's conclusion, contained in the alternative Rule 60(b)(6) analysis in section IV of the R&R, that there was "no fraudulent concealment" by Bronstein.  Plaintiff asserts that Bronstein fraudulently concealed his assets by 1) failing to give the proceeds of the sale of his house to the S.D.N.Y. as restitution and 2) ceasing all restitution payments at a time when he was capable of making these payments. (*Id.* at 16.)   Plaintiff also argues that the Magistrate Judge placed "the burden of persuasion upon the wrong party," as it was Bronstein obligation to prove he was entitled to relief.  (*Id.*)  Second, the sixth objection questions whether there were "extraordinary circumstances" sufficient to justify the application of Rule 60(b)(6).

The seventh and final objection relates to another portion of the R&R's Rule 60(b)(6) analysis in which Judge Kuo opined that "[p]ermitting enforcement of a judgment more than

11

three years after it expired would impose undue hardship on Defendant, who had good reason to believe that there was finality in this matter and he would not be hauled back into court." (R&R at 13.) Plaintiff argues that the magistrate judge had no factual basis for this finding. (Objections at 18.) In addition, plaintiff asserts that this finding is undercut by the existence of other cases filed by other victims and "the continuing cloud of restitution enforcement in the S.D.N.Y. …." (*Id.* at 19.)

## STANDARD OF REVIEW

The procedures relating to filing and adjudicating objections to a report and recommendation are set forth in 28 U.S.C. § 636 and Rule 72 of the Federal Rules of Civil Procedure. The statute provides that within fourteen days after being served with a copy of a report and recommendation, "any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court." 28 U.S.C. § 636(b)(1). A district judge must then make "a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *Id.* The judge "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge" or "may receive further evidence or recommit the matter to the magistrate judge with instructions." *Id.*

Rule 72 essentially tracks the language of its statutory analog. It provides that "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2). "The rule adds that the objections must be 'specific' so as to conform to the statute's requirement that the judge review those portions of the proposed findings or recommendations to which objection is made; failure to make appropriately specific objections excuses the district

judge from doing a de novo review." 12 Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, Fed. Practice & Procedure, Civ. § 3070.1 (3d ed. 2011). If "the [objecting] party makes only frivolous, conclusory or general objections, or simply reiterates [his] original arguments, the Court reviews the report and recommendation only for clear error." *Kamden-Ouaffo v. Balchem Corp.*, No. 17-CV-2810 (PMH), 2021 WL 1101126, at *2 (S.D.N.Y. Mar. 23, 2021) (quoting *Velez v. DNF Assocs., LLC*, No. 19-CV-11138 (GHW) (SDA), 2020 WL 6946513, at *2 (S.D.N.Y. Nov. 25, 2020)) (alterations in *Kamden-Ouaffo*).

DISCUSSION

In this case, all of plaintiff's objections are sufficiently specific to require de novo review. Plaintiff's first objection relates to Judge Kuo's observation that Bronstein would have had "no reason" to argue "that the Georgia Judgment had become unenforceable by the time of registration in this District … before April 11, 2016"—the date on which the judgment was registered. Although Plaintiff argues that this finding is "without evidentiary support and is mere conjecture by the Magistrate Judge," (Objections at 1), this observation is a logical tautology. Indeed, Bronstein would not only have "no reason" to seek to vacate the registration until the registration occurred, but would be unable to do so. Although plaintiff claims that "Defendant had the opportunity for seven years preceding April 11, 2016 to move to vacate the judgment," the Somers Affidavit concedes that plaintiff made no attempt to enforce the Judgment until 2016.

Plaintiff's second objection takes issue with Judge Kuo's statement that Bronstein's motion to vacate the Judgment on personal jurisdiction grounds "raises an issue of voidness." (R&R at 4.) As noted above, the basis for this objection unclear. To the extent plaintiff objects to the use of the term "voidness," the Court notes that the Fourth Circuit case on which plaintiff herself relies uses this term, stating that "a judgment may be vacated for voidness under Rule

13

60(b)(4) … if the rendering court lacked personal jurisdiction …." *Garcia Fin. Grp.*, 3 F. App'x at 88 (citing *Eberhardt v. Integrated Design & Constr., Inc.*, 167 F.3d 861, 871 (4th Cir. 1999)). To the extent plaintiff is arguing that there is no basis for finding that the United States District Court for the N.D. Ga. lacked jurisdiction over Bronstein, the Court notes that the R&R reached this same conclusion. (R&R at 4.)

The third objection challenges Judge Kuo's statement that "[t]he record is devoid of any effort to enforce the … Judgment because Plaintiff apparently had no intention of enforcing it." (R&R at 5.) In evaluating this objection, it is important to place this statement in context. First, the sentence was contained in that portion of the R&R which concluded that plaintiff had not sought enforcement of the Judgment within ten years of its entry. Second, this sentence prefaced a paragraph summarizing those portions of the Somers Affidavit that explained why plaintiff elected not to pursue enforcement during that ten-year period.

Given this context, it is clear that Judge Kuo's statement was not mere conjecture. First, the claim that plaintiff "apparently had no intention of enforcing" the judgment is supported by statements contained in Somers Affidavit, which explain that plaintiff chose not to seek enforcement of the Judgment because she was afraid of reprisals, had already received $42,613.22 in restitution payments from the S.D.N.Y., and assumed that there were no substantial assets left to be recovered. Second, the statement that "[t]he record is devoid of any effort to enforce the … Judgment" refers to plaintiff's inaction during the ten-year period following entry of the Judgment. Plaintiff's objections not only do not contest the finding that she took no enforcement actions during this period, but imply that plaintiff did not take any action until in March 2016, which she discovered that Bronstein had substantial assets in New York. (*See* Objections at 3.)

14

The fourth objection is predicated on plaintiff's contention that the ten-year limitations period for enforcing a Georgia judgment is not a statute of limitations, but a statute of repose. To be sure, Georgia law recognizes a distinction between a statute of limitation and a statute of repose:

> A statute of limitation is a procedural rule limiting the time in which a party may bring an action for a right which has already accrued. A statute of ultimate repose delineates a time period in which a right may accrue. If the injury occurs outside that period, it is not actionable.

*Craven v. Lowndes County, Hosp. Auth.*, 263 Ga. 657, 660, 437 S.E.2d 308 (1993); *see also Pafford v. Biomet*, 264 Ga. 540, 543, 448 S.E.2d 347 (1994).

The ten-year limitations period at issue in this case arises from two statutes codified in the Official Code of Georgia. OCGA § 9-12-60(a)(1) provides that a judgment shall become dormant and shall not be enforced "[w]hen seven years shall elapse after the rendition of the judgment before execution is issued thereon and is entered on the general execution docket of the county in which the judgment was rendered." OCGA § 9-12-61 permits a dormant judgment to be revived within three years from the time it becomes dormant. Although Plaintiff has located an opinion from a South Carolina bankruptcy court which states that OCGA "§ 9-12-60 is a statute of repose," *In re Sanders*, 521 B.R. 532, 535 (Bankr. D.S.C. 2014), the Supreme Court of Georgia has made it clear that "dormancy under OCGA § 9-12-60 constitutes a statute of limitations." *Corvin v. Debter*, 281 Ga. 500, 501, 639 S.E.2d 477, 478 (2007). Indeed, Georgia Courts of Appeals routinely state that §§ 9-12-60 and 9-12-61 "operate in tandem as a ten-year statute of limitation for the enforcement of Georgia judgments." *Robinson v. Citibank, N.A.*, 365 Ga. App. 27, 28, 877 S.E.2d 281, 282 (2022) (quoting *Corzo Trucking Corp. v. West*, 281 Ga. App. 361, 362–63, 636 S.E.2d 39, 40 (2006); *First Merit Credit Servs. v. Fairway Aviation, LLC*,

15

359 Ga. App. 829, 833, 860 S.E.2d 126, 130 (2021) (quoting *Automotive Credit Corp. v. White*, 344 Ga. App. 321, 323 (2018)).

Even assuming that plaintiff were correct in contending that OCGA § 9-12-60 is a statute of repose, that fact would not favor plaintiff. As the Supreme Court of Georgia has explained:

> A statute of repose stands as an unyielding barrier to a plaintiff's right of action. The statute of repose is absolute; the bar of the statute of limitation is contingent. … The statute of repose destroys the previously existing rights so that, on the expiration of the statutory period, the cause of action no longer exists.

*Wright v. Robinson*, 262 Ga. 844, 845, 426 S.E.2d 870, 871–72 (1993). A "statute of repose, unlike a statute of limitation, may not be tolled for any reason, including fraud." *Balotin v. Simpson*, 286 Ga. App. 772, 773, 650 S.E.2d 253, 254 (2007). This is because "tolling would deprive [a] defendant of the certainty of the repose deadline and thereby defeat the purpose of a statute of repose." *Id.*

Notwithstanding the bright-line rule that the statute of ultimate repose cannot be tolled, "in certain narrow circumstances, a defendant may be equitably estopped from raising the statute of repose as a defense." *Smith v. Kayfan*, 364 Ga. App. 651, 654, 874 S.E.2d 465, 468 (2022) (quoting *Balotin*, 286 Ga. App. at 773, 650 S.E.2d at 254). However, equitable tolling has been invoked only where a "plaintiff delayed in filing suit until after the statute of repose's expiration due to fraudulent acts by … defendants which were designed to prevent or discourage the plaintiffs from filing suit." *Rosenberg v. Falling Water, Inc.*, 289 Ga. 57, 60, 709 S.E.2d 227, 230 (2011). If the fraudulent act occurred after the statute of repose had already expired, it obviously could not be the cause of the delay in bringing suit and equitable tolling would not be appropriate.

16

These "narrow circumstances" are not present here. First, while Bronstein may have improperly ceased paying restitution and concealed the proceeds of the sale of his home, there is nothing to suggest that these fraudulent acts were "designed to prevent or discourage" plaintiff from seeking to enforce the Judgment. Indeed, the fact that Bronstein ceased making regular restitution payments almost immediately after his supervised release ended should have caused plaintiff to suspect that Bronstein was fraudulently concealing income and should have prompted her to act to ensure that those payments continued.[1]

Second, the Somers Affidavit makes it clear that plaintiff's failure to pursue enforcement was not due to fraud. As noted above, Somers states that plaintiff chose not to seek enforcement of the Judgment because 1) she was fearful of reprisals from Bronstein and his co-defendants and 2) she incorrectly assumed that she was unlikely to receive more in restitution than the $42,613.22 she had already received from S.D.N.Y. in July 2001. (Somers Aff. at ¶5.) Notably, Somers does not state that fraudulent actions by Bronstein played any part in dissuading plaintiff from pursuing enforcement of the Judgment. Accordingly, even assuming that OCGA § 9-12-60 were a statute of repose, the Somers Affidavit suggest that there is no basis for equitable estoppel in this case.

Plaintiff's fifth objection, which contests Judge Kuo's rejection of plaintiff's claim that the 2016 registration of the Judgment created "a 'new' enforceable judgment," principally relies on a misreading of *Stanford v. Utley*, 341 F.2d 265 (8th Cir. 1965). As expressly stated in *Stanford*, that case addressed the question of "whether a federal judgment creditor is entitled to enforcement in a sister state *when his judgment is registered in the sister state within the*

---

[1] The Court declines to consider the affidavit of handwriting expert Wendy Carlson, (Doc. No. 65-1), because this affidavit was not presented to the magistrate judge. The Court notes, however, that this affidavit relates solely to a 2016 document. Any forgery in that document could not have dissuaded plaintiff from timely enforcing the 2003 Judgment.

*judgment state's limitation period* but enforcement is sought later at a time within the registration state's own limitation period but after the expiration of the period of limitations of the judgment state." *Stanford*, 341 F.2d at 266 (emphasis added). The Eighth Circuit answered that question in the affirmative, holding that the act of registering the judgment was not merely "ministerial," but created "the equivalent of a new judgment of the registration court." *Id.* at 268. However, the Eighth Circuit agreed with the district court's observation that the enforcement action would be time-barred if it had begun more than seven years after the judgment, since the judgment state's laws provided that the judgment expired after seven years. *Id.*

The other case on which Plaintiff relies—*Wells Fargo Equipment Finance, Inc. v. Asterbadi*, 841 F.3d 237 (4th Cir. 2016)—reaches the same conclusion as the *Stanford* Court. In that case, the Fourth Circuit held "that the registration of [a] Virginia district court judgment in the District of Maryland *at a time when the judgment was not time-barred by Virginia law* functions as a new judgment in the District of Maryland, and Maryland's 12-year limitations period for enforcement on the judgment begins running from the date of registration." *Wells Fargo*, 841 F.3d at 246 (emphasis added). *Wells Fargo* did not consider, much less endorse, the position that plaintiff advocates: that registration of a judgment that is already time-barred in the state in which the judgment was entered creates a new, enforceable judgment in the registration state. The Court fully concurs with Judge Kuo's determination that the late registration of the Judgment in this District did not create a new, enforceable judgment.

The other issues raised in plaintiff's fifth objection are also without merit. First, Bronstein's motion squarely raised the argument that the Judgment was dormant by the time it was registered in this District and should not be enforced. (Def. Mot. at 5–7.) Judge Kuo did not raise the issue sua sponte. Moreover, even assuming that the issue should not have been raised

18

under Rule 60(b)(4) on the ground that the Judgment was "void," Judge Kuo acted properly in ignoring the labels used by Bronstein and considering the essence of this meritorious argument. *See Covington Indus.*, 629 F.2d at 733 ("Adjudication by nomenclature is a relic of ancient practice, contrary to both the letter and spirit of the Federal Rules of Civil Procedure.") (citing *Hadden v. Rumsey Prod.*, 196 F.2d 92, 95 (2d Cir. 1952) ("[I]t would be quite out of harmony with the spirit of Rule 1 [of the Federal Rules of Civil Procedure] to hold the appellees bound by the labels placed on the papers submitted to the district court."); *Comprehensive Merchandising Catalogs, Inc. v. Madison Sales Corp.*, 521 F.2d 1210, 1211 n.1 (7th Cir. 1975) (relief from enforcement of purportedly invalid foreign judgment will not be defeated because a party may have improperly designated application as motion under Rule 60(b)).

Second, case law pertaining to a party's right to appeal from a consent judgment is entirely inapposite. Even if Bronstein's agreement to arbitrate and his failure to contest the N.D. Ga. action to confirm the arbitration award could be characterized as consenting to the Judgment, Bronstein did not consent to the late registration of that Judgment in this District. Furthermore, that portion of Bronstein's motion which contests the late registration is not analogous to an appeal of the Judgment.

Plaintiff's sixth and seventh objections both relate to Judge Kuo's alternative analysis under Rule 60(b)(6), set forth in section IV of the R&R. Since the Court has already determined de novo that it is appropriate to vacate the registration for the reasons set forth in the sections of the R&R, there is no need to consider these objections.

## CONCLUSION

Having considered de novo those portions of the R&R to which plaintiff specifically objects, the Court adopts all portions of the R&R except for the alternative analysis in section IV.

19

Accordingly, the registration of the Judgment is vacated and the parties' cross-motions for attorney's fees are denied. In light of this determination, plaintiff's motion for reconsideration of Judge Kuo's protective order, (Doc. No. 41); plaintiff's motion to join Oceana Holding Corporation as a defendant, (Doc. No. 48); Oceana Holding Corporation's motion to dismiss that motion, (Doc. No. 50); and all other outstanding motions (Docs. No. 63, 73–76) are moot. The Clerk of Court is directed to close this case.

SO ORDERED.

Dated: Brooklyn, New York
September 6, 2023

*Roslynn R. Mauskopf*
ROSLYNN R. MAUSKOPF
United States District Judge